IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SPANISH PEAKS LODGE, LLC, ) | |
| et al, ) | |
|     Plaintiff, ) | |
| ) | |
|     vs. ) | Civil Action No. 10-453 |
| ) | |
| KEYBANK NATIONAL ASSOCIATION, ) | |
| et al, ) | |
|     Defendants. ) | |

AMBROSE, District Judge

## OPINION
### and
## ORDER OF COURT

KeyBank National Association and KeyBanc Capital Markets, Inc. ("KeyBank") have filed a Motion for Spoliation Sanctions against Voyager Group, L.P., Voyager Investments, L.P., Spanish Peaks Lodge, LLC and Spanish Peaks Holdings II, LLC ("Voyager"). See ECF Docket No. [8]. KeyBank contends that Voyager instituted a document retention policy[1] for the sole and express purpose of destroying documents relevant to this litigation. As movant, KeyBank bears the burden of proof in establishing spoliation. See Gentex Corp. v. Sutter, Civ. No. 7-1269, 2011

---

[1] KeyBank characterizes the policy as a "document destruction policy" but I find that characterization to be inflammatory.

1

WL 5040893 at * 5 (M.D. Pa. Oct. 24, 2011), *citing*, Byrnie v. Town of Cromwell, 243 F.3d 93, 108 (2d Cir. 2001) and Culler v. Shinseki, Civ. No. 9-305, 2011 WL 3795009 at * 3 (M.D. Pa. Aug. 26, 2011).

To prevail on its motion, KeyBank must first demonstrate that Voyager spoliated evidence.  Only if Voyager meets this threshold burden would I then consider the imposition of sanctions. The Third Circuit Court of Appeals recently clarified this two-step process in Bull v. UPS, 665 F.3d 68, 73-74 (3d Cir. 2012).[2]  Thus, turning first to the issue of spoliation, I must consider whether KeyBank has demonstrated that:

(1) The evidence was in Voyager's control;

(2) The evidence is relevant to the claims / defenses in the case;

(3) There has been actual suppression or withholding of the evidence; and

(4) A duty to preserve the evidence was reasonably foreseeable to Voyager.

See Bull, 665 F.3d at 73.  Assuming for the sake of argument only, that KeyBank could meet its burden of proof with respect to the first three factors, I find that it has not demonstrated that, at the time Voyager contemplated implementing its data retention policy, or when it actually implemented it, the duty to preserve evidence was reasonably foreseeable.

---

[2]  To the extent that my decision in Phillips v. Potter, Civ. No. 7-815, 2009 WL 1362049 (W.D. Pa. May 14, 2009) conflated these two inquiries, the Bull decision clarifies the method of analysis.

The question of reasonable foreseeability is both flexible and fact-specific.  See Bull, 665 F.3 at 77-78, *citing*, Micron Technology, Inc. v. Rambus, Inc., 645 F.3d 1311, 1320 (Fed. Cir. 2011).  Accordingly, I must closely examine the facts in the record before me.  Nevertheless, I find helpful the "Guidelines" set forth in The Sedona Conference Commenting on Legal Holds: The Trigger & The Process, 11 Sedona Conf. J. 265 (Fall 2010).  The Sedona Conference Working Group on Electronic Document Retention & Production suggests that:

> A reasonable anticipation of litigation arises when an organization is on notice of a credible probability that it will become involved in litigation, seriously contemplates initiating litigation, or when it takes specific actions to commence litigation.

11 Sedona Conf. J. at 271.  The first clause – "on notice of probability that it will become involved in litigation" – speaks to a defendant's duty.  It informs Voyager's duty here. Simply stated, KeyBank has not proffered any compelling evidence that it had put Voyager on notice that it should reasonably anticipate litigation prior to the implementation of the documentation retention policy in August of 2009.[3]  The record is devoid of anything akin to a receipt of summons or complaint, the issuance of a subpoena, a formal notice that Voyager was the target of an investigation, or the filing of an EEOC charge.  There are no items which would ordinarily put a defendant "on notice" that it should "reasonably anticipate" litigation. See 11 Sedona Conf.

---

[3] I find credible the testimony introduced during the hearing that the document retention policy was implemented for legitimate business purposes unconnected with the current litigation.  I also find credible the testimony that the policy was developed by Ascent Data independent of influence by Voyager.

J. at 271.  Indeed, KeyBank never indicated in any conversations, letters or emails, that it was considering litigation.  As a Defendant, the first notice of a credible probability that Voyager had that it would become involved in litigation was when it was served with a complaint in this action on September 14, 2009.  The very next day Voyager altered its document retention policy so as to create a litigation hold.  See ECF Docket No. [84-3], p. 4, ¶ 12.

Instead, KeyBank focuses upon a few emails[4] that Voyager authored – emails KeyBank contends reveal that Voyager itself understood that litigation was imminent and in fact demonstrate that Voyager was contemplating litigation.  Yet the evidence KeyBank offers is more of the type one would normally associate with a party initiating litigation. Again, I find a critical distinction here in the fact that Voyager did not initiate litigation. The Sedona Conference Guidelines suggest that a reasonable anticipation of litigation arises with respect to an organization on the plaintiff's side – when it "seriously contemplates initiating litigation, or when it takes specific actions to commence litigation." 11 Sedona Conf. J. at 271.  In other words, "seeking advice of counsel, sending a cease and desist letter or taking specific steps to

---

[4] The relevant issue before me is whether Voyager spoliated evidence by instituting a document retention policy on August 14, 2009 and thus whether Voyager reasonably anticipated litigation as of that date.  KeyBank has not submitted any case law indicating that emails or statements made after the date of alleged spoliation somehow cast light upon what Voyager reasonably anticipated as of August 14th (unless, of course, the evidence directly speaks of Voyager's state of mind prior to that date). For this reason, I decline to consider the evidence KeyBank submits which post-date August 14th because I find that such evidence does not speak of Voyager's state of mind pre-August 14th.

commence litigation may trigger the duty to preserve." Id. As illustrated below, the evidence offered by KeyBank in this regard does not rise to this level.

Specifically, KeyBank offers an email from Michael Zanolli, Voyager's Managing Director of Real Estate Financing, dated April 24, 2009, which reads:

> I left you a voicemail, we should discuss.  In addition to a number of things, within your discussion document, in light of KeyBank's failure to deliver on the Lodge construction loan and associated potential lender liability, the ask for $1 mm principal down payment is out of line.  I am in the office until 4:30 pm today if you wish to discuss today, will be in the office Monday as well.

See ECF Docket No. [82], p. 3-4 (emphasis added).

Despite KeyBank's protestations otherwise, I find that this email does not suggest that Voyager reasonably anticipated litigation.  First, Zanolli explained that he included the reference in an effort "to induce Key to reduce their intransigence to negotiate on the $5 million loan… ." See ECF Docket No. [84-17], p. 143. Second, the recipient of the email testified that the reference to "lender liability" meant nothing – he understood it to be used as a negotiating tool and stated that it was a phrase used often in the course of a workout negotiation. See ECF Docket No. [84-16], p. 120-121. Third, and significantly, the evidence of record indicates that KeyBank itself did not issue a litigation hold at the time this alleged "threat" was communicated. Indeed, KeyBank apparently did not implement its litigation hold until October of 2009.  I have a

difficult time conceiving of issuing a ruling where I would find that Voyager, should have "reasonably anticipated" litigation based upon the communication of a "threat of litigation" to KeyBank, where KeyBank, the recipient of that threat, and the actual initiator of litigation, did not understand that same "threat" in a manner so as to reasonably anticipate litigation and institute a litigation hold.

In addition to the April 24, 2009 email, KeyBank proffers both an internal Voyager email dated August 6, 2009 wherein an expletive was used with respect to KeyBank, and an August 7, 2009 email from Voyager's counsel to KeyBank, which indicated that "Release remains open." Again, I am not convinced that these abbreviated emails suggest that Voyager reasonably anticipated litigation. Neither email references litigation.  Nor is there any indication that KeyBank understood the second email to suggest litigation because KeyBank did not respond to the email by establishing its own litigation hold.

In short, KeyBank has offered nothing more than a vague reference to "potential lender liability" (made during negotiations and which both sides understood to be nothing more than a negotiating tactic); a derogatory word used in reference to KeyBank; and a comment to KeyBank that the "Release remains open."  In contrast, Voyager did not initiate suit here – KeyBank did.  Nothing in the record suggests that Voyager ever seriously contemplated filing

suit, ever contacted litigation counsel, ever drafted a complaint, or ever sent KeyBank a letter threatening litigation. Nor, importantly, does the record indicate that KeyBank, who did in fact initiate litigation, ever interpreted the remarks made by Voyager to KeyBank, to suggest the possibility of litigation.  Indeed, it did not establish its document hold until <u>after</u> Voyager.

Though the question of reasonable foreseeability is fact specific, KeyBank does cite to case law in support of its proposition. After careful consideration, I find KeyBank's reliance upon these cases to be misplaced. [5]

For these reasons, I find that no duty to preserve evidence existed at the time the document retention policy was implemented and KeyBank has not met its burden in establishing that Voyager spoliated evidence.[6]

---

[5] KeyBank cites to <u>Rimkus Consulting Group, Inc. v. Cammarata</u>, 688 F. Supp.2d 598 (S.D. Tex. 2010) in support of the proposition that a party's duty to preserve can arise prior to litigation.  I find <u>Rimkus</u> distinguishable because there, the parties who were found to have spoliated evidence had discussed a plan to initiate suit, then established a document retention policy, then in fact initiated suit.  Here, Voyager did not discuss plans to initiate suit and never, in fact, initiated suit.   Similarly, in <u>Cenveo Corp. v. Southern Graphic Systems, Inc</u>., 2010 WL 3893680, Civ. No. 8-5521 (D. Minn. June 18, 2010), the court found the defendant engaged in spoliation where he had deleted emails while acknowledging that he felt he would get sued.  In contrast, here the emails KeyBank relies upon do not speak of "getting sued."  Nothing on the record here suggests that Voyager knew, at the time it implemented its policy, it would be sued.  The August 17, 2009 email suggests the possibility of future litigation, but such possibility does not convince me to impose a duty to preserve. KeyBank's citation to Judge Conti's decision in <u>Hogan v. Raymond Corp.</u>, Civ. No. 10-846, 2011 WL 1044826 at * 9 (W.D. Pa. March 18, 2011), for the proposition that "courts within the Third Circuit have held that when a party has knowledge of a potential claim[,] [that] is deemed sufficient to impose a duty to preserve evidence," is similarly unpersuasive. <u>See</u> ECF Docket No. [91], p. 6.  Judge Conti found no duty to preserve evidence to exist with respect to a non-party.  Further, Judge Conti's citation was to the decision rendered in <u>Winters v. Textron</u>, 187 F.R.D. 518, 520 (M.D. Pa. 1999), where the defendant was found to have spoliated evidence when it disposed of the evidence in question <u>after</u> receipt of the complaint. Here, the record is clear that the document retention policy was put in place long <u>before</u> Voyager's receipt of the complaint.

[6] KeyBank urges that Voyager's assertion of the work product doctrine asserted with respect to documents prepared prior to implementation of the document retention policy supports the notion that Voyager reasonably anticipated litigation prior to the implementation of such policy.  I accept Voyager's response that the designation of such documents as "work product" during the discovery process was simply a result of overly zealous lawyering.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SPANISH PEAKS LODGE, LLC, | ) | |
| et al, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs. | ) | Civil Action No. 10-453 |
| | ) | |
| KEYBANK NATIONAL ASSOCIATION, | ) | |
| et al, | ) | |
|     Defendants. | ) | |

AMBROSE, District Judge

### ORDER OF COURT

AND NOW, this 15th day of March, 2012, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motion for Spoliation Sanctions (Docket No. [81]) is DENIED.

                                                                                            BY THE COURT:
                                                                                            <u>/s/Donetta W. Ambrose</u>
                                                                                            Donetta W. Ambrose
                                                                                            Senior U.S. District Judge

---

Voyager has represented that it will amend its privilege log.  This Court hereby orders Voyager to do so immediately.