IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEYBANK NATIONAL ASSOCIATION,       )
                                    )
            Plaintiff,              )
                                    )
      vs.                           )   Consolidated Case No. 10-0453
                                    )
VOYAGER GROUP, L.P. and VOYAGER     )
INVESTMENTS LP,                     )
            Defendants.             )
                                    )
_____   )
                                    )
            –                       )
SPANISH PEAKS LODGE, LLC,           )
VOYAGER GROUP, L.P. and VOYAGER     )
INVESTMENTS, L.P.,                  )
            Plaintiffs,             )
                                    )
      vs.                           )
                                    )
KEYBANK NATIONAL ASSOCIATION and    )
KEYBANK CAPITAL MARKETS, INC.,      )
            Defendants.             )
                                    )
_____   )
                                    )
            –                       )
SPANISH PEAKS HOLDINGS II, LLC,     )
Successor to Spanish Peaks Holdings, )
LLC,                                )
                                    )
            Plaintiff,              )
                                    )
      vs.                           )
                                    )
KEYBANK NATIONAL ASSOCIATION and    )
KEYBANC CAPITAL MARKETS, INC.,      )
            Defendants.             )
                                    )

AMBROSE, Senior District Judge

**OPINION**
and
**ORDER OF COURT**

**Synopsis**

KeyBank National Association filed a Motion for Summary Judgment on its Affirmative Claim for Money Judgment. (ECF No. 110).  KeyBank National Association and KeyBanc Capital Markets, Inc. (collectively "KeyBank") also filed a Motion for Summary Judgment on the Affirmative Claims of Spanish Peaks Lodge, LLC ("SP Lodge"), Voyager Group, LP and Voyager Investments LP (collectively "Voyager Entities"), and Spanish Peaks Holdings II, LLC ("SP Holdings"). (ECF No. 112).  Specifically, KeyBank seeks summary judgment on its breach of contract claims against Voyager Entities and a money judgment for all amounts due under the Credit Note ("Note") issued to Lodge.  (ECF No. 110).  Additionally, KeyBank seeks a dismissal of all claims filed by Voyager Entities, SP Lodge, and SP Holdings.  (ECF No. 112). After careful consideration of submissions and as more fully set forth below, KeyBank's Motions for Summary Judgment (ECF Nos. 110 and 112) are granted in part and denied in part as set forth below.

I.    **Background**

By way of background, all actions consolidated at this case arise from KeyBank's alleged failure to provide the necessary financing for a construction project located in Big Sky, Montana.

The Voyager Entities own SP Holdings.  SP Holdings is the owner and developer of The Club at Spanish Peaks ("the Club").  SP Holdings planned to construct "The Lodge at Spanish Peaks" (the "Lodge Project") as the centerpiece of the Club.  SP Holdings created SP Lodge for the explicit purpose of developing and constructing the Lodge Project.  SP Holdings conveyed to SP Lodge the right to construct the Lodge on the Club's land, but retained its ownership of the land.

In 2007, SP Lodge entered into discussion with KeyBank National Association to provide the financing for the Lodge Project.  The parties have introduced a loan Commitment Letter signed by the parties in the summer of 2007.  The loan commitment was for $120,000,000.

In the meantime, KeyBank and SP Lodge entered into a $5,000,000 Bridge Loan to enable SP Lodge to begin construction immediately.  The Voyager Entities guaranteed the repayment of the Bridge Loan and entered into a Payment Guaranty.  The Bridge Loan and Payment Guaranty were finalized on September 28, 2007.

The $120,000,000 credit facility loan never happened.  SP Lodge defaulted on the Bridge Loan.  KeyBank demanded repayment from the Voyager Entities.  The Voyager Entities have failed to make any payment to KeyBank.[1]

As a result of the above, the parties initiated the instant lawsuits.

II.     **Legal Discussion**

A.      **Standard of Review**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion.  *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to

---

[1] The necessary remaining disputed facts are incorporated within the body of the opinion.

demonstrate that the evidence creates no genuine issue of material fact.  *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir. 1987).   The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  *Celotex,* 477 U.S. at 322.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  *Id.* at 324.  Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

**B.  Claims Against Key Bank**

**1.  SP Lodge's Breach of Contract Claim Against KeyBank**

SP Lodge alleges a breach of contract claim against KeyBank for breach of the Commitment Letter.  (ECF No. 65).  Montana law[2] provides that "[i]t is essential to the existence of a contract that there be: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration."   Mont. Code Ann. §28-2-102.  Montana law further provides as follows:

> The interpretation and construction of a contract is a question of law. *Corporate Air,* ¶ 30 (citation omitted). " 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' " *Corporate Air,* ¶ 30 (quoting § 28–3–301, M.C.A.). When a contract is in writing, the parties' intentions are to be determined

[2] The parties agree that Montana law governs the present dispute.

from the writing alone, if possible. *Corporate Air,* ¶ 30 (citing § 28–3–303, M.C.A.); *State ex rel. Mont. Dept. of Transp. v. Asbeck,* 2003 MT 337, ¶ 18, 318 Mont. 431, 80 P.3d 1272 (citation omitted) ("in interpreting a written contract, the intention of the parties is ascertained 'first and foremost' from the writing alone"). " 'The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other.' " *Richards v. JTL Group, Inc.,* 2009 MT 173, ¶ 14, 350 Mont. 516, 212 P.3d 264 (quoting § 28–3–202, M.C.A.). "It is [a] well-established principle of contractual construction that in interpreting a written instrument, the court will not isolate certain phrases of the instrument to garner the intent of the parties, but will grasp the instrument by its four corners and in the light of the entire instrument, ascertain the paramount and guiding intent of the parties. Mere isolated tracts, clauses and words will not be allowed to prevail over the general language utilized in the instrument." *Rumph v. Dale Edwards, Inc.,* 183 Mont. 359, 368, 600 P.2d 163, 168 (1979) (citations omitted); *accord Sandtana, Inc. v. Wallin Ranch Co.,* 2003 MT 329, ¶ 26, 318 Mont. 369, 80 P.3d 1224 (citations omitted). "Particular clauses of a contract are subordinate to its general intent." Section 28–3–307, M.C.A.. Moreover, contract terms that are inconsistent with the general nature of the contract or the primary intention of the parties are to be rejected. Section 28–3–503, M.C.A.; *Rumph,* 183 Mont. at 369, 600 P.2d at 169.

"Whether an ambiguity exists in a contract is a matter of law. An ambiguity's existence must be determined on an objective basis." *Richards,* ¶ 26 (citation omitted). An ambiguity exists when the contract language, taken as a whole, could reasonably be given two different meanings. *Richards,* ¶ 26 (citation omitted)…. "Where the language of a contract is unambiguous—i.e., reasonably susceptible to only one interpretation—the duty of the court is to apply the language as written." *Corporate Air,* ¶ 32 (citation omitted).

*Krajacich v. Great Falls Clinic, LLP,* No. DA 11-0621, 2012 WL 1319684, *3, 5 (Mont. 2012); *see also, Anaconda Public Schools, Bd. of Trustees of Anaconda School Dist. No. 10 v. Whealon,* 363 Mont. 344, 350, 268 P.3d 1258, 1262-63 (Mont. 2012) ("If the court finds that contract language is ambiguous, it may consider extrinsic or parol evidence to resolve the ambiguity." (quotation omitted)).

KeyBank asserts that it is entitled to summary judgment as to the SP Lodge's breach of contract claims against it for four reasons: 1) The Commitment Letter was not signed by KeyBank and, thus, is unenforceable; 2) The Commitment Letter is non-binding by its written Terms; 3) The Commitment Letter expired by its terms; and 4) SP Lodge failed to satisfy their own conditions precedent set forth in the Commitment Letter.  (ECF No. 113, pp. 7-15).  I will address each in turn.

a.      Signed Commitment Letter

KeyBank argues there was no final version of the Commitment Letter that was formally signed by both parties.  (ECF No. 113, pp. 8-9).  To that end, KeyBank points to evidence that signatures were executed on different days to different versions of the Commitment Letter.  *Id;* *see also,* ECF No. 140, pp 2-4 and ECF No. 134-47.  As a result, KeyBank argues that SP Lodge has failed to produce a signed, enforceable contract and, therefore, there can be no breach of contract claim.  *Id.*  In response, SP Lodge argues that there was only one Commitment Letter and that Commitment Letter is a legally enforceable contract.  (ECF No. 127, pp. 20-22).  This is based on the version of the Commitment Letter attached to the Complaint.  (ECF No. 65, Ex. A).  Based on a review of the same, I find reasonable minds could differ on this issue.  Therefore, there is a genuine issue of material fact as to whether there was a signed enforceable Commitment Letter agreed to by the parties.  As a result, summary judgment on this issue is not warranted.

b.      Is the Commitment Letter Binding

Assuming, *arguendo,* the Commitment Letter is enforceable, KeyBank argues that summary judgment is still warranted because it is non-binding by its written terms.  (ECF No. 113, pp. 9-10).  Specifically, KeyBank argues that the first two pages of the Commitment Letter reference that it is subject to "the terms and conditions set forth in the Summary of Terms and Conditions attached" as Exhibit A.  *Id.*  In turn, the Summary of Terms and Conditions sheet states that "[t]he following…should not be construed as a commitment on the part of KeyBank National Association or KeyBanc Capital Markets to lend."  *Id., citing* ECF No. 134-47, p. 4.  Additionally, at the bottom of every page of the Summary of Terms and Conditions it states that "[t]his term sheet is provided for DISCUSSION PURPOSES ONLY.  The information does not constitute a commitment to provide financing by KeyBank and is provided as a guideline for further discussions."  *Id.*  In opposition, SP Lodge, SP Holdings and the Voyager Entities (collectively referred to as "SP parties") argue that the first two pages of the Commitment Letter

stating that KeyBank "hereby commits to make a loan available to" SP Lodge trumps the boilerplate language in the Summary of Terms and Conditions sheet.  (ECF No. 127, pp. 22-23).  In Reply, KeyBank points to the language of Commitment Letter where it states that the commitment to loan is subject to the Summary of Terms and Conditions sheet as evidence that the Commitment Letter is conditional and is not trumped by the "boilerplate" language but, rather, is based on the same.  (ECF No. 140, p. 4-5).   After a review of the same, I agree with the SP parties that this creates a genuine issue such that summary judgment in favor of KeyBank is not warranted on this issue.

### c.      Is the Commitment Letter expired by its terms

Assuming, arguendo, the Commitment Letter is enforceable and binding, KeyBank next argues that the Commitment Letter expired by its terms on October 15, 2007.  (ECF No. 113, pp. 10-11.[3]  The Commitment Letter specifically states in the last sentence as follows:

> Notwithstanding the timely acceptance of this Commitment, this Commitment will expire if definitive Loan Documents are not executed on or before October 15, 2007.

(ECF No. 65-2, p. 2).   I find this language to be unambiguous.   There is no question that definitive loan documents were not executed on or before October 15, 2007.   Thus, by its own unambiguous terms, the Commitment Letter expired on October 15, 2007.  *Id.*

Montana law provides that "[w]ith respect to a commercial loan, a contract action or a breach of contract action may not be brought against a regulated lender on a promise or

---

[3]  I note that the SP parties have addressed every argument made by KeyBank except this argument.  *See,* ECF No. 127.  The only time the SP parties mention the October 15, 2007 expiration date is in the next subsection when they address the argument that they failed to satisfy their own conditions precedent set forth in the Commitment Letter.  (ECF No. 127, p. 24).  Therein, the SP parties suggest that on October 2, 2007, when "Paisley informed Hein that [Key]Bank would not be in a position to close the loan by October 15, 2007, [KeyBank] anticipatorily breach[ed] the Commitment Letter."  (ECF No. 127, p. 24).  To the extent this sentence can somehow be construed to address the expiration argument raised by KeyBank, I find that it is misplaced.  The date of October 15, 2007, is the expiration date for the Commitment Letter, not a condition of the Commitment Letter that can be breached.  Consequently, by its terms, the Commitment Letter was no longer in effect after October 15, 2007.

commitment that is not in writing where the promise or commitment is to: (a) lend money or to extend credit; (b) alter, amend, renew, extend, or otherwise modify an existing promise, commitment, or agreement to lend money or extend credit; or (c) make a financial accommodation."   M.C.A. §31-1-116.   The parties have failed to provide an additional commitment letter or a modified commitment letter wherein the parties agree to alter, amend, extend or otherwise modify the expiration date of the Commitment Letter.

Consequently, I find there is no genuine issue of material fact that the Commitment Letter expired on October 15, 2007.  Therefore, summary judgment in favor of KeyBank on this issue is warranted.

This does not end the inquiry, however.

> d.      Did SP Lodge fail to satisfy their own conditions precedent set forth in the Commitment Letter

KeyBank asserts that SP Lodge did not perform all conditions precedent to the financing of the Lodge Project, such that there can be no breach of the contract.  (ECF No. 113, pp. 11-14).  "A condition precedent is one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed."  M.C.A. §28-1-403.  "Before a party to an obligation can require another party to perform any act under it, the party shall fulfill all conditions precedent to the act imposed upon that party…."  M.C.A. §28-1-406.

Specifically, in this case, KeyBank asserts that there were two conditions precedent that SP Lodge failed to satisfy: 1) the requirement to secure 25 condominium pre-sales; and 2) the requirement to provide a first mortgage on the Lodge Project as partial security for any construction loan, which required transfer of the land underlying the Lodge Project from SP Holdings to SP Lodge.  (ECF No. 113, pp. 11-14).  As a result, KeyBank asserts that there was never any breach.  In response, SP parties argue that the pre-sales were not due until the loan's closing.  After a review of the evidence, I find that there is a genuine issue of material fact as to when the pre-sales were due.  *Compare,* ECF No. 134-6, p. 8 ("Executed contracts will be

required at close"), *with,*  ECF No. 134-4, p. 16 (Paisley Depo discussing the need to have and review the executed contracts prior to closing to make sure they are accurate.  "What this is really saying is you're never closing the loan without the contract.  It isn't saying at the time you deliver the contracts is the day you close the loan.").  Therefore, I find summary judgment is not warranted under this theory.

SP parties also assert that they were willing and able to satisfy the requirement to provide a first mortgage of the Lodge Project[4] if the closing would have actually taken place on October 15, 2007.  Based on the record submitted, I find that there is a genuine issue regarding SP parties' ability to provide a first mortgage.  (ECF No. 127, p. 25, *citing,* RSOF ¶¶23-25, 156).  Therefore, summary judgment is not appropriate.

### 2.      SP Lodge's Breach of Implied Contract Claim Against KeyBank

The SP parties assert, separately and alternatively, a breach of implied contract claim against KeyBank.  KeyBank asserts that it is entitled to summary judgment as to SP Lodge's breach of implied contract claim against it for the following reasons: 1) Montana law will not enforce an implied contract to lend money; and 2) Montana law will not recognize an implied modification of the Commitment Letter.   (ECF No. 113, pp. 15-16).  As I stated previously, Montana law provides as follows:

**31-1-116.  Commercial loans – when written agreement required**

(1)  With respect to a commercial loan, a contract action or a breach of contract action may not be brought against a regulated lender on a promise or commitment that is not in writing where the promise or commitment is to:

(a)    lend money or to extend credit;

(b)    alter, amend, renew, extend, or otherwise modify an existing promise,   commitment, or agreement to lend money or extend credit; or

(c)    make a financial accommodation.

---

[4] SP parties also assert they were willing and able to satisfy the pre-sale requirement, but I need not consider this argument since I found a genuine issue on other grounds.

M.C.A. §31-1-116.  In other words, the plain meaning of the statute provides that for a breach of contract action to exist under Montana law for a commercial loan, it must be in writing.  *Id.*  I agree with KeyBank that this statute expressly prohibits the very implied contract claim advanced by the SP parties.

In response, the SP parties first confuse the concepts of a claim for a breach of an implied contract versus the breach of a term implied in a written contract.   (ECF No. 127, pp. 28-29).  According to M.C.A. §31-1-116, any amendment, alteration, extension, or modification of a prior written contract must also be in writing, thereby barring an implied breach of contract claim.  M.C.A. §31-1-116(b).

Next, the SP parties summarily argue that because the parties have both partially performed on the contract, it is removed from the statute of frauds and the doctrines of waiver and estoppel preclude KeyBank from invoking the statute of frauds.  (ECF No. 127, pp. 28-79).  These arguments fail as well.  To begin with, Section 31-1-116 is not the Statue of Frauds.  Rather, the statute at hand relates to commercial loans only and prohibits certain actions where the agreement and any subsequent modifications are not in writing.  M.C.A. §31-1-116.  Under this statute, there can be no implied breach of contract claim.   The waiver and estoppel argument, to the extent relevant and permissible, would apply to the breach of contract claim that is permitted to proceed.

Consequently, I find there is no genuine issue of material fact that the SP parties' separate implied breach of contract claim fails.  Therefore, summary judgment in favor of KeyBank is warranted on the SP parties' separate implied breach of contract claim.

### 3.     Claim for Breach of Good Faith and Fair Dealing Against KeyBank

KeyBank argues that it is entitled to summary judgment as to the claims for breach of good faith and fair dealing against it for two main reasons: 1) SP Lodge and the Voyager Entities have no factual basis for a good faith and fair dealing claim; and 2) SP Lodge and the Voyager Entities failed to attach their claim to a contract. (ECF No. 113, pp. 17-20).  "[E]very

contract regardless of type, contains an implied covenant of good faith and fair dealing." *Knucklehead Land Co. v. Accutite, Inc,* 172 P.3d 116, 121 (Mont. 2007). Thus, to recover on a theory of breach of good faith and fair dealing, there must be an enforceable contract to which the covenant applies. *Hurly v. Lake Cabin Development*, LLC, 276 P.3d 854, 860 (Mont. 2012)*, quoting Knucklehead Land Co.,* 172 P.3d at 121. This does not mean, however, that a breach of the underlying contract is a prerequisite. *Knucklehead Land Co.,* 172 P.3d at 121.

Pursuant to Montana law, the covenant of good faith and fair dealing is defined as "conduct that is honest in fact and observes 'reasonable commercial standards of fair dealing in the trade." *Knucklehead Land Co.,* 172 P.3d at 121; M.C.A. §28-1-111. In other words, the parties are required to "perform, in good faith, the obligations imposed" by the contract according to the particular industry standard. *McCoy v. First Citizens Bank,* 148 P.3d 677, 680 (Mont. 2006), *quoting, Independence Lead Mines v. Hecla Mining Co.,* 137 P.3d 409, 413 (Idaho 2006). The trade at issue in this case is the banking industry. *McCoy v. First Citizens Bank,* 148 P.3d 677, 681-82 (Mont. 2006).

Based on the record submitted in this case and contrary to KeyBank's assertion, I find that the SP parties have submitted evidence to support a finding a breach of good faith and fair dealing. *See,* ECF No. 127, pp. 30-32. For example, there is contradictory evidence as to whether KeyBank perform in good faith to secure an appraisal, in preparing loan documents, and in providing assurances. *Compare,* ECF No. 127, pp. 30-32, *with*, ECF No. 113, pp. 18-20 and ECF No. 140, pp. 8-9. Furthermore, since there is a genuine issue as to whether there is a valid enforceable underlying contract, KeyBank's theory that it is entitled to summary judgment because there is no underlying contract to attach their claim fails as well. Consequently, summary judgment as to this claim is not warranted.

**4.**     **Claims for Promissory Estoppel Against KeyBank**

SP Holdings asserts a claim for promissory estoppel against KeyBank.[5] (Complaint, ECF

No. 65, ¶105).  The following elements are necessary to establish promissory estoppel under

Montana law:

> (1)     a promise clear and unambiguous in its terms;
>
> (2)     reliance on the promise by the party to whom the promise is made;
>
> (3)     reasonableness and foreseeability of the reliance; and
>
> (4)     the party asserting the reliance must be injured by the reliance.

*Payne Realty and Housing, Inc. v. First Sec. Bank of Livingston*,  256 Mont. 19, 28-29, 844 P.2d

90, 95-96 (Mont.,1992) (*quoting, Keesun Partners v. Ferdig Oil Co., Inc.* (1991), 249 Mont. 331,

339, 816 P.2d 417, 422).

In its Motion, KeyBank argues that it is entitled to summary judgment as to the claims for

promissory estoppel for five reasons:

> 1)     There was no promise to engage a competent appraiser and reliance on
> the same was not reasonable;
>
> 2)     The promise to close the $120 million loan by October 15, 2007, is
> nothing more than a promise to comply with the terms of the Commitment Letter
> and, thus, does not create an independent ground for promissory estoppel;
>
> 3-4)     KeyBank's promise that the $5 million Bridge Loan would be repaid from
> the $120 million loan and the payment guaranty discharged; and
>
> 5)     The promise to make a future loan in some unspecified amount not
> actionable.

(ECF No. 113, pp. 20-26). With regard to the first, after a review of the entire record in the light

most favorable to the non-moving party, I find that SP parties have submitted evidence that

---

[5] The promissory estoppel claim is based on KeyBank's allegedly "clear and unambiguous
promises" to SP Holdings that: 1) KeyBank promised that it would engage an appraiser with the
ability to appraise the Lodge Project in a timely manner; 2) KeyBank promised that it would
close on a $120 million credit facility for the construction of the Lodge Project on or before
October 15, 2007; and 3) after failing to assemble and close on a $120 million credit facility by
October 15, 2007, KeyBank continually promised throughout 2007 and 2008 that it had the
intent and ability to close on a credit facility sufficient to allow SP Lodge to complete
construction of the Lodge Project.  (Complaint, ECF No. 65, ¶105).

factually disputes KeyBank's claims.  *Compare* ECF No. 127, pp. 32-37; *with* ECF No. 113, pp. 20-21 and ECF No. 140, p. 10.  Thus, there is contradictory evidence creating genuine issues of material fact preventing summary judgment on the first basis.

With regard to the second basis advanced, I disagree that the SP parties cannot advance a theory of promissory estoppel.  It is an alternate theory to the breach of contract claim.  Further, after a review of the entire record in the light most favorable to the non-moving party, I find SP parties have submitted evidence that factually disputes KeyBank's claims. *Compare* ECF No. 127, pp. 32-37; *with* ECF No. 113, pp. 23-24.  Thus, there is contradictory evidence creating genuine issues of material fact preventing summary judgment on the second basis.

With regard to the third and fourth bases advanced, these theories are advanced only by the Voyager Entities (see Case No. 9-1238, ECF No. 26, ¶108).  The Voyager Entities have failed to completely fail to address this argument.  *See,* ECF No. 127, pp. 32-37.  Pursuant to Rule 56, the Voyager Entities must go beyond their pleadings and submit evidence to support their theories.  Fed. R. Civ. Pro. 56.  As stated previously, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322. Here, the Voyager Entities fail to establish a promise clear and unambiguous in its terms.  Therefore, I find that summary judgment as to the third and fourth bases of promissory estoppel advanced the Voyager Entities (that KeyBank promised that the $5 million bridge loan would be repaid using the proceeds of the $120 million credit facility and that KeyBank promised the Voyager Entities' guarantees on the $5 million bridge loan would be discharged by the repayment of the bridge loan using the proceeds of the $120 million credit facility) is warranted in favor of KeyBank.

With regard to the last basis advanced, after a review of the entire record in the light most favorable to the non-moving party, I find SP parties have submitted evidence that factually disputes KeyBank's claims.  *Compare* ECF No. 127, pp. 32-37; *with* ECF No. 113, pp. 25-26 and ECF No. 140, p. 11.  Thus, there is contradictory evidence creating genuine issues of material fact preventing summary judgment on the fifth basis of promissory estoppel.

**5.    Claims for Fraudulent and/or Negligent Misrepresentation Against KeyBank**

KeyBank argues that it is entitled to summary judgment as to the claims for fraudulent and/or negligent misrepresentation.  Under Montana law, fraudulent misrepresentation requires proof of the following elements:

1)    a representation;

2)    the falsity of the representation;

3)    its materiality;

4)    the speaker's knowledge of its falsity or ignorance of its truth;

5)    the speaker's intent that it should be relied on;

6)    the hearer's ignorance of the falsity of the representation;

7)    the hearer's reliance on the representation;

8)    the hearer's right to rely on the representation; and

9)    consequent and proximate injury caused by reliance on the representation.

*C. Haydon Ltd. v. Montana Min. Properties, Inc.,* 864 P.2d 1253, 1256 (Mont. 1993), citing, *Pipinich v. Battershell* (1988), 232 Mont. 507, 511, 759 P.2d 148, 151 (citation omitted). Negligent misrepresentation, on the other hand requires the following elements:

1)    the defendant made a representation as to a past or existing material fact;

2)    the representation must have been untrue;

3)    regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

4)      the representation must have been made with the intent to induce the plaintiff to rely on it;

5)      the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation, and it must have been justified in relying on the representation;

6)      the plaintiff, as a result of his or her reliance, sustained damage.

*Kurtzenacker v. Davis Surveying, Inc.*, 278 P.3d 1002, 1007-08 (Mont. 2012), *citing, Deichl v. Savage,* 216 P.3d 749 (Mont. 2009).

In their Complaint and Counterclaims, the SP parties assert the same representations that it asserted under the promissory estoppel claim in their fraudulent and/or negligent misrepresentation claims.  *See,* ECF No. 65, ¶111 and Case No. 9-1238, ECF No. 26, ¶119. After a review of the entire record in the light most favorable to the non-moving party, and for the reasons set forth above under my discussion of promissory estoppel, I find there are genuine issues of material fact preventing summary judgment on all of the issues of fraudulent and negligent misrepresentation with the exception of the two bases set forth below.  *Compare* ECF No. 127, pp. 37-39, *with* ECF No. 113, pp. 27-33, and 140, pp. 12-13.   As a result, summary judgment is not warranted on these bases.

As with my discussion on promissory estoppel, however, I do find that summary judgment in favor of KeyBank is warranted as it relates to theories advanced only by the Voyager Entities (see Case No. 9-1238, ECF No. 26, ¶119).   The Voyager Entities have failed to address this argument.  *See,* ECF No. 127, pp. 37-39.  Pursuant to Rule 56, the Voyager Entities must go beyond their pleadings and submit evidence to support their theories.  Fed. R. Civ. Pro. 56.  As stated previously, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322. Here, the Voyager Entities fail to establish a false or untrue representation was made.

15

Therefore, I find that summary judgment as to the additional bases of fraudulent/negligent misrepresentation advanced the Voyager Entities (that KeyBank represented it would allow the $5 million bridge loan to be repaid using the proceeds of the $120 million credit facility and that KeyBank represented that it would discharge the guarantees on the bridge loan upon repayment of the bridge loan using the proceeds of the $120 million credit facility) is warranted in favor of KeyBank.

### 6.    Claims for Constructive Fraud Against KeyBank

KeyBank argues that it is entitled to summary judgment as to the claims for constructive fraud, as well.  (ECF No. 113, pp. 34-35).  Constructive fraud is defined under Montana law as follows:

(1)    any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or

(2)    any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

M.C.A. §28-2-406.  Thus, under constructive fraud, there is no element of intent to deceive or dishonesty of purpose.  *Town of Geraldine v. Montana Mun. Ins. Auth.,* 198 P.3d 796, 801 (Mont. 2008).

In their Complaint and Counterclaims, the SP parties assert the same representations that they asserted under the fraudulent misrepresentation claims as they do under their constructive fraud claims.  *See,* ECF No. 65, ¶120 and Case No. 9-1238, ECF No. 26, ¶128. After a review of the entire record in the light most favorable to the non-moving party, and for the reasons set forth above under my discussion of promissory estoppel, I find there are genuine issues of material fact preventing summary judgment on all of the issues of constructive fraud with the exception of the two bases set forth below.  *Compare* ECF No. 127, pp. 39-40,

*with* ECF No. 113, pp. 34-35, and 140, pp. 14-15.   As a result, summary judgment is not warranted on these bases.

As with my discussion on fraudulent misrepresentation, however, I do find that summary judgment in favor of KeyBank is warranted as it relates to theories advanced only by the Voyager Entities (see Case No. 9-1238, ECF No. 26, ¶119).   The Voyager Entities have failed to address this argument.   *See,* ECF No. 127, pp. 37-39.   Pursuant to Rule 56, the Voyager Entities must go beyond their pleadings and submit evidence to support their theories.   Fed. R. Civ. Pro. 56.   As stated previously, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322. Here, the Voyager Entities fail to establish a false or untrue representation was made. Therefore, I find that summary judgment as to the additional bases of constructive fraud advanced the Voyager Entities (that KeyBank created the false impression that the $5 million bridge loan to be repaid using the proceeds of the $120 million credit facility and that KeyBank created the false impression that the guarantees on the bridge loan upon repayment of the bridge loan using the proceeds of the $120 million credit facility) is warranted in favor of KeyBank.

### 7.   Claims for Declaratory Judgment Against KeyBank

The Voyager Entities assert one final count – a request for declaratory judgment that KeyBank has actually or constructively discharged them of any obligation to repay the $5 million bridge loan.   *See,* Case No. 9-1238, ECF No. 26, ¶¶137-142.   As to this claim, KeyBank asserts that summary judgment is warranted based on its prior arguments.   (ECF No. 113, p. 35).   Since I have found no genuine issues of material fact above as it relates this issue, summary judgment in favor of KeyBank as to the Voyager Entities declaratory judgment claim is warranted.

C.      **Claims against KeyBanc Capital Markets, Inc**

KeyBank asserts in three conclusory sentences that "KeyBanc had no ability or capacity to extend a loan …or control KeyBank's underwriting efforts." (ECF No. 113, p. 35).   This underdeveloped assertion is devoid of factual support or argument.   Thus, I find it is insufficient to raise the issue before me.   Consequently, I find summary judgment as to KeyBanc Capital Market, Inc. is not warranted.

D.      **KeyBank's Affirmative Claims against the Voyager Entities[6]**

On or about September 28, 2007, KeyBank extended a $5,000,000 loan to SP Lodge ("Bridge Loan").   The Voyager Entities were Guarantors to this loan.  (ECF No. 119-98).   The Bridge Loan had a 90 day term and one 30 day extension.   SP Lodge defaulted on the Bridge Loan.   On August 29, 2009, KeyBank demanded repayment of the Bridge Loan.   Voyager Entities did not repay the Bridge Loan.   KeyBank filed a Complaint against the Voyager Entities asserting a breach of payment guaranty for the failure to repay the $5,000,000.00 Bridge Loan. (Case No. 9-1238, ECF No. 1).   KeyBank now seeks summary judgment as to this claim. (ECF No. 111).

In asserting its Motion, KeyBank makes clear that it "is not contending…,that the Payment Guaranty serves as a bar to the Voyager Entities attempt to litigate their counterclaims which arise from the unfunded construction loan.   Such claims have however, been voluntarily waived as **defenses** to payment and therefore cannot be interposed to interfere with KeyBank's action to enforce its rights under the Payment Guaranty." (ECF No. 111, pp. 5-6, emphasis in the original).   In other words, KeyBank is not "suggesting that the Payment Guaranty prohibits the Voyagers Entities from bringing and prosecuting their affirmative claims that are the subject of KeyBank's separate motion for summary judgment.   However, the Payment Guaranty expressly prohibits the Voyager Entities from seeking to avoid their repayment liability for SP Lodge's defaulted loan obligations on that basis that they may possess certain perceived

---

[6] The Voyager Entities include, Voyager Group, LP and Voyager Investments LP.

defenses or setoff rights." (ECF No. 111, p. 17). In their Reply Brief, KeyBank further clarifies by stating "KeyBank is **not** arguing for purposes of its Motion that the Voyager Entities are prohibited from litigating their counterclaims and otherwise having their day in court…." (ECF No. 139, p. 2, emphasis in original).

To that end, KeyBank asserts that the Payment Guaranty is a valid contract, that Spanish Peaks defaulted on its Bridge Loan, that it demanded payment from the guarantors, the Voyager Entities, and that the Voyager Entities failed to make payment under the Payment Guaranty. Thus, KeyBank argues that the unambiguous terms of the Payment Guaranty requires repayment of the Bridge Loan which is not altered by the doctrine of mergers or the parol evidence rule. (ECF No. 111. pp. 9-17). Therefore, KeyBank asserts that summary judgment is warranted as to its Breach of Payment Guaranty claims. (ECF No. 111, pp. 9-19).

In response, the Voyager Entities do not dispute that the Payment Guaranty is valid, that Spanish Peaks defaulted on its Bridge Loan, that KeyBank demanded payment from the Voyager Entities and that the Voyager Entities failed to make payment under the Payment Guaranty. (ECF No. 127, pp. 41-46). Rather, the Voyager Entities argue that based on extrinsic evidence they are discharged from the Payment Guaranty as a result of KeyBank's fraudulent misrepresentations and constructive fraud.

In anticipation of this argument, KeyBank argues that the Doctrine of Mergers and the parol evidence rule prohibit consideration of such evidence to modify the parties' written contract. Pursuant to Montana law, the parol evidence rule provides:

**28-2-904. Effect of written contract on oral agreements**

The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

Mont. Code Ann. §28-2-904. Montana law further provides that extrinsic evidence may be considered under the following circumstances:

1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:

> (a) when a mistake or imperfection of the writing is put in issue by the pleadings;

> (b) when the validity of the agreement is the fact in dispute.

(2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.

(3) The term "agreement", for the purposes of this section, includes deeds and wills as well as contracts between parties.

Mont. Code Ann. § 28-2-905.

To this point, KeyBank first argues that the Voyager Entities are not permitted to assert a fraud exception "because the Voyager Entities have previously conceded in prior briefing that they 'do not allege that prior or contemporaneous understandings or negotiation between the parties should alter or contradict the express terms of the Payment Guaranty (or the bridge Loan).'" (ECF No. 111, p. 13). I am not persuaded by this argument. The Voyager Entities are not limited to arguments previously made in prior submissions.

Next, KeyBank argues that the Voyager Entities' fraudulent inducement theory is "based upon an oral understanding that their repayment obligations would be discharged if the larger construction loan was not closed." (ECF No. 111, p. 13). In fact, the Voyager Entities argue that they were "fraudulently deceived" into executing "the Bridge Loan documents with the clear understanding that the Bridge Loan would later be repaid with the proceeds from the Construction Loan." (ECF No. 127, p. 43). According to Montana law, fraudulent inducement exception to the parol evidence rule "only applies when the alleged fraud does not relate directly to the subject of the contract. Where an alleged oral promise directly contradicts the terms of an express written contract, the parol evidence rule applies.'" *Sherrodd, Inc. v. Morrison-Knudsen Co.,* 249 Mont 282, 815 P.2d 1135, 1137 (1991), *citing, Continental Oil Co. v. Bell*, 94 Mont.

123, 133, 21 P.2d 65, 67 (1933)*, see also, Richards v. JTL Group, Inc.,* 350 Mont. 516, 531, 212 P.3d 264, 275 (2009); *Lindey's Inc. v. Professional Consultants, Inc.,* 244 Mont. 238, 245, 797 P.2d 920, 925 (1990).

In this case, I find there is no issue that the repayment terms of the Payment Guaranty are directly related to the subject of the Payment Guaranty.   The repayment is mentioned, covered, and dealt with in the Payment Guaranty.  (ECF No. 119-98).   Consequently, I find that the fraudulent inducement exception to the parol evidence rule does not apply.[7]  Since the parol evidence rule applies and there is no genuine issue of material fact that the Payment Guaranty is valid, that Spanish Peaks defaulted on its Bridge Loan, that KeyBank demanded payment from the Voyager Entities and that the Voyager Entities failed to make payment under the Payment Guaranty, I find summary judgment in favor of KeyBank on its claims for Breach of Payment Guaranty against the Voyager Entities is appropriate.[8]

I note that KeyBank also argues that summary judgment is warranted because the unambiguous terms of §2 of the Payment Guarantee prohibits the Voyager Entities from

---

[7] Similarly, KeyBank argues that the doctrine of mergers prohibits the consideration of extrinsic evidence.  (ECF No. 111, pp. 15-17).  The doctrine of mergers provides that evidence of prior oral agreements is inadmissible where there is a subsequent written agreement as to the same subject, into which it is assumed all prior oral agreements are merged. *Eiselein v. Montana Bank of Roundup,* 250 Mont. 71, 74, 818 P.2d 365, 367 (Mont. 1991), *citing, First Nat. Mont. Bank of Missoula v. McGuiness*, 217 Mont. 409, 417, 705 P.2d 579, 584 (1985).  The Voyager Defendants do not address the doctrine of mergers argument other than listing it in its subheadings.  In other words, their argument is subsumed in their parole evidence argument. For the reasons set forth above under my discussion of the parol evidence rule, I find there is no genuine issue of material fact that the merger doctrine prohibits the consideration of extrinsic evidence to alter the terms of the repayment under the Payment Guaranty.

[8] The Voyager Entities suggest that, "[a]t most, the parol evidence rule only address…evidence of prior or contemporaneous understandings or negotiations in an attempt to alter or contradict the express terms of the Payment Guarantees (or the Bridge Loan)," and as such the parol evidence rule does not operate to preclude their claims or defenses "insofar as they are based on evidence of such extensive post-closing conduct by KeyBank."  (ECF No. 127, p. 44, emphasis in original).  I disagree.  The exception to the parol evidence rule alleged by the Voyager Entities is fraud in the inducement, which relates to prior or contemporaneous activity. Thus, the parol evidence rule applies and any activity after the Payment Guaranty is formed is irrelevant with regard to the terms of the contract.  Therefore, I find no merit to this argument.

asserting a claim of offset or similar defense as it relates to the Bridge Loan.  (ECF No. 111, pp. 17-19, *citing* 119-98, §2).  Section 2 provides as follows:

> 2.      In the event of any default by Borrower in the payment of the Indebtedness, after the expiration of any applicable cure or grace period, each Guarantor agrees, on written demand by the Lender, to pay the amount of Indebtedness then due and owing regardless of any defenses, right of set-off or claims which Borrower or such Guarantor may have against the Lender or the hold of the Note and without relief from valuation and appraisement laws.

(ECF No. 119-98, p 3).  Courts have upheld similar provisions permitting parties to expressly waive defenses and set-off rights.  *See, JPMorgan Chase Ban, N.A., v. KB Home,* 740 F.Supp.2d 1192, 1201 (D. Nev. 2010); *see,* 38A C.J.S. *Guaranty* §§125-126 (2012) (A guarantor can waive the right to set-off and counterclaims in a guaranty and said waivers are enforceable).

In response, the Voyager Entities address Section 3(c) of the Payment Guaranty as being void as a matter of law.  (ECF No. 127, p. 44-46).  KeyBank, however, is not proceeding under Section 3(c), but rather Section 2.  *See,* (ECF No. 139, pp. 3-4).  Thus, the Voyager Entities mischaracterize KeyBank's position and, therefore, their argument is completely misplaced.

Nonetheless, I must still view the evidence in the light most favorable to the Voyager Entities.  In so doing, I find that §2 of the Payment Guaranty is unambiguous. Under the clear provisions of §2, the Voyager Entities expressly agreed to pay the indebtedness regardless of any defenses, right of set-off or claims.   (ECF No. 119-98, p 3, §2).  Thus, I find that §2 of the Payment Guaranty prohibits the Voyager Entities from asserting a claim of offset or similar defense.  Therefore, I find summary judgment in favor of KeyBank on its claims for Breach of Payment Guaranty against the Voyager Entities is appropriate for this reason as well.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEYBANK NATIONAL ASSOCIATION,    )
                                 )
                    Plaintiff,   )
                                 )
        vs.                      )       Consolidated Case No. 10-0453
                                 )
VOYAGER GROUP, L.P. and VOYAGER  )
INVESTMENTS LP,                  )
                    Defendants.  )
                                 )
_____)
                                 )
             –                   )
                                 )
SPANISH PEAKS LODGE, LLC,        )
VOYAGER GROUP, L.P. and VOYAGER  )
INVESTMENTS, L.P.,               )
                    Plaintiffs,  )
                                 )
        vs.                      )
                                 )
KEYBANK NATIONAL ASSOCIATION and )
KEYBANK CAPITAL MARKETS, INC.,   )
                    Defendants.  )
                                 )
_____)
                                 )
             –                   )
                                 )
SPANISH PEAKS HOLDINGS II, LLC,  )
Successor to Spanish Peaks Holdings, )
LLC,                             )
                                 )
                    Plaintiff,   )
                                 )
        vs.                      )
                                 )
KEYBANK NATIONAL ASSOCIATION and )
KEYBANC CAPITAL MARKETS, INC.,   )
                    Defendants.  )
                                 )

AMBROSE, Senior District Judge

**ORDER**

AND now, this 13th day of September, 2012, after careful consideration of KeyBank's Motions for Summary Judgment (ECF Nos. 110 and 112), it is ordered that said Motions are granted in part and denied in part as follows:

1.      KeyBank's Motion for Summary Judgment as to the Affirmative Claims of SP Lodge, the Voyager Entities, and SP Holdings (ECF No. 112) is granted in that:

      a.      the Commitment Letter expired on October 15, 2007;

      b.      KeyBank is granted summary judgment on the SP parties' implied breach of contract claim; and

      c.      KeyBank is granted summary judgment as to the bases of promissory estoppel, fraudulent and/or negligent misrepresentation, and constructive fraud advanced solely by the Voyager Entities regarding repayment of the $5 million bridge loan with the proceeds of the $120 million credit facility and regarding the discharge of the repayment of the $5 million bridge loan using the proceeds of the $120 million credit facility);

      d.      KeyBank is granted summary judgment as to the Voyager Entities claim for declaratory judgment.

2.      KeyBank's Motion for Summary Judgment as to the Affirmative Claims of SP Lodge, the Voyager Entities, and SP Holdings (ECF No. 112) is denied in all other respects.

3.      KeyBank's Motion for Summary Judgment on its Affirmative Claim for Money Judgment against the Voyager Entities (ECF No. 110) is granted.


BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge